# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

GENE L. WADE,                                Case No. 07-Cr-061

    Defendant.

## MAGISTRATE JUDGE'S RECOMMENDATION TO THE HONORABLE LYNN ADELMAN

## NATURE OF CASE

On March 6, 2007, a federal grand jury sitting in this district returned a one-count indictment against defendant Gene L. Wade. Defendant Wade is charged with being a convicted felon in possession of a weapon, a Colt .357 caliber revolver, in violation of 18 U.S.C. § 922(g)(1) and 924(e)(1).

On May 1, 2007, the defendant appeared before United States Magistrate Judge Aaron E. Goodstein for arraignment, entering a plea of not guilty. Pursuant to the pretrial scheduling order issued at that time, the defendant filed a motion to dismiss (speedy trial) (Docket #3), a motion for disclosure of confidential informant (Docket #9) and a motion to suppress evidence – warrantless search. (Docket #10). The motion to suppress will be addressed herein.

## MOTION TO SUPPRESS EVIDENCE - WARRANTLESS SEARCH

On June 8, 2007, the court conducted an evidentiary hearing on the defendant's motion to suppress statements. At the hearing, the following individuals testified on behalf of the government: Timothy Bandt and Anthony Randazzo, officers with the City of Milwaukee Police Department (MPD) and MPD Detective David Baker. Defendant Gene Wade testified on his own behalf. The parties also submitted stipulated facts. Based on the testimony presented at the hearing and the stipulation of the parties, the court now makes the following findings of fact.

## Findings of Fact

On January 25, 2007 at 4:02 p.m., the Honorable Barry C. Slagle, Court Commissioner for Milwaukee County, based on the affidavit sworn by MPD Officer Timothy Bandt, issued a "no knock" search warrant for the premises at:

> 1731 West Atkinson Av. Unit 1 is the upper unit of a multiple unit building having brick exterior and red trim. The numbers 1731 appear on the North side of the building. This premises is located in the city of Milwaukee, County of Milwaukee, State of Wisconsin.

(Search Warrant at 1).

On January 27, 2007, in the morning hours, members of the tactical enforcement unit of the Milwaukee Police Department went to 1731 West Atkinson to execute the search warrant. While the unit was attempting to break down the door at 1731 West Atkinson, a citizen advised the officers that Unit 1 in the building was only accessible by a door that was located on the same wall of the building, but west of the door that was marked "1731." This second door was marked "1735." The citizen pointed to the windows on the east side of the building as the windows to Unit 1. Another citizen, who had keys to the building, admitted the

- 2 -

Case 2:07-cr-00061-LA   Filed 07/11/07   Page 2 of 14   Document 37

tactical unit to the building through the entranceway of the second door, the door marked "1735." The officers proceeded up to the second story of the building where several apartments were located.

Milwaukee Police Department (MPD) Officer Timothy Bandt, who was in charge of the investigation, went upstairs with the tactical unit and proceeded down the hallway. He determined the location of Unit 1. According to Officer Bandt, as the tactical unit was about to make entry into the unit, the defendant opened the door. The tactical unit entered the defendant's apartment and, at approximately 9:55 a.m., arrested the defendant and secured his two female visitors.

After the residence was secured and the defendant placed under arrest, Officer Bandt testified that he asked the defendant where he resided and the defendant said at 1735 W. Atkinson Avenue. At that point, according to Officer Bandt, he told the tactical unit not to search the residence and he left the building to secure an amended search warrant.

Officer Bandt went to the offices of Milwaukee County Court Commissioner Patrice Baker and explained that access to the building was through the door marked "1735." He presented Commissioner Baker with the original warrant, which he modified to change the address to 1731-1735 W. Atkinson Avenue, Unit 1, instead of 1731 W. Atkinson Avenue, Unit 1, and reswore the affidavit. The warrant also contained a new date and his initials. Specifically, Officer Bandt wrote in the following language in the affidavit: "1731-1735 W. Atkinson Av. is a multi unit building. Unit 1 is directly above 1731. It was found that access to Unit 1 is 1735 W. Atkinson and is 1735 W. Atkinson." (Defendant's Motion to Suppress Evidence - Warrantless Search, Exh. 1).

- 3 -

At 11:07 a.m. on January 27, 2007, the Honorable Patrice Barker, Court Commissioner for Milwaukee County, authorized a search warrant containing the modifications. After Commissioner Barker reissued the search warrant, Officer Bandt called the officers and advised them that the search warrant had been reissued and they could begin to search the residence. He then returned to 1735 W. Atkinson Avenue. During a search of the defendant's apartment, police recovered several items of evidence, including a loaded Colt .357 revolver.

Officer Bandt did not get a warrant for 1735 W. Atkinson Avenue before entering the defendant's residence because he believed that the evidence could have been removed. Since the officers had been battering on the door, he testified that it was no secret that the officers were at the building. The officers were in the middle of a tactical entry and there was a lot of noise, commotion and yelling "search warrant." Officer Bandt also was concerned for the safety of the officers and the possible destruction of evidence. The addresses, 1731, 1733 and 1735 W. Atkinson Avenue, are all addresses on one building.

MPD Detective David Baker was involved in the search of the residence on January 27, 2007. He was on surveillance on the west side of the building to make sure that people did not exit from other doors or that evidence was not tossed out of the building. He could not see the officers attempting to enter the building, but he heard heavy pounding on the door for approximately 15 seconds followed by a long delay. Subsequently, he went up the stairs to the second floor just as the tactical unit was walking out.

Detective Baker went to Unit 1, which is the only Unit 1 in the building, and observed the defendant seated on a sofa. Two other females were also in the apartment. At that time, Lieutenant Hagen, Sergeant Brown, Detectives Schmidt and Miscichoski and Officer Randazzo were also in the apartment. According to Detective Baker, Officer Bandt left to seek

an amended search warrant with an address change. Detective Baker was in the apartment approximately 10 minutes when he and Officer Randazzo left to get coffee for the officers. They were gone approximately 25 minutes and, upon their return, they observed everyone in the unit, including the officers, watching a movie.

Detective Baker testified that shortly after 11:00 a.m., Sergeant Brown received a telephone call from Officer Bandt advising that the warrant had been modified and approved and that the search could begin. Detective Baker testified that he searched the southeast bedroom with Officer Randazzo. He found a Colt .357 revolver concealed under a dresser drawer with a pill bottle lying next to the weapon. Detective Baker had pulled out the dresser drawer and observed the gun lying in the dead space underneath the drawer. Detective Baker then notified Officer Bandt that he had found a firearm. The defendant was placed in a police wagon and taken to jail after the pistol was found.

The defendant testified that he resides at 1735 W. Atkinson Avenue, Unit 1 and that the only way to get into the building is from the front because the back door is sealed off. On January 27, 2007, he heard banging and the words, "police" and "search warrant." The defendant testified that he looked through the peephole in his door and saw the officers at Apartment No. 5 saying, "police." The defendant opened his door to tell the officers that Karen White, who lived in Unit 5, had a sofa in front of that door. According to the defendant, at that time, the officers turned and told him to get down and started pointing guns at him.

The defendant also testified that he told the officers that he was disabled and then one of the female officers assisted him onto the floor. According to the defendant, one of the tactical officers kicked him in the chest and he received medical treatment later that day. The defendant also testified that when the officer kicked him in the chest, the female officer that

- 5 -

was helping him asked the officer what was wrong with him since the defendant was already on the floor. The officer continued into the residence with the other officers. The female officer then helped the defendant off the floor and took him over to the couch where he sat down. The defendant was dressed in boxer shorts with no shirt.

The defendant stated that the officers were hollering, "clear, clear, clear." Subsequently, two women who were in the apartment were brought into the living room area. Then, the officers with "the big guns" left the apartment. At some point, the defendant was placed in plastic handcuffs and one of the women was also handcuffed. The defendant did not know if handcuffs were placed on the second woman in the apartment.

According to the defendant, as soon as the officers with the big guns left the apartment, the remaining officers put on rubber gloves, went into separate rooms and started searching. One officer went into the bedroom and the female officer who had helped him off the floor was in the kitchen going through the cabinets. The defendant testified that Officer Bandt was present in the kitchen when one of the female officers was going through the defendant's cabinets and when an officer was taking pictures. The defendant testified that another female officer was in the foyer opening up the dining room closet and the walk-in closet and pulling out items. According to the defendant, Detective Baker was in the bathroom dumping stuff out into the sink. He could hear the officer in the bedroom throwing stuff around. The defendant stated that he then heard the officer in the bedroom say, "we got it."

The defendant further testified that Officer Bandt, who was standing in the living room with a piece of paper, asked the defendant if he was Gene Wade. Officer Bandt then asked if this was 1731 W. Atkinson to which the defendant replied, "no, this is 1735." According to the defendant, Officer Bandt had a stunned look and asked, "this isn't 1731?". The defendant

reiterated that his address was 1735, at which point Officer Bandt stopped, walked out the door and proceeded down the steps.

According to the defendant, he then heard Officer Bandt come back up the steps and saw one officer in the living room walk to the door. The defendant testified that he heard the two officers in the doorway talking. One officer said words to the effect, "this is wrong" and the other officer responded that the officer needed to go get it straightened out. The defendant said that Officer Bandt did not come back into the apartment. He and one other officer left.

After Officer Bandt left the apartment, the defendant stated that one of the officers came out of the bedroom with two brown grocery bags and put them on the dining room table. The two bags made a "clunk" when they were put on the table.

The defendant testified that at some point he asked the officers if they had a search warrant and was told that an officer was taking care of that. The defendant had not seen a search warrant at that time. According to the defendant, one of the officers then cut off his plastic handcuffs and the other cuffs were taken off the woman in the apartment. The defendant, the officers and the women then watched a movie on the defendant's DVD player.

The defendant stated that, at some point, Officer Bandt came back into the apartment and stated that he had called a conveyance. The defendant was given some clothes which he put on and the officers took him out of the apartment. The defendant testified that he never saw anyone find a gun in his house. The officers did not show him a gun. According to the defendant, the officers were in his apartment for approximately two hours before he was taken from the residence.

MPD Officer Anthony Randazzo participated in the search warrant on January 27, 2007. He went upstairs after the tactical entry team had secured the residence and he was aware

- 7 -

that there was a problem with the warrant. He testified that the officers did not search the residence until they were told they were able to search. While they were waiting for this notification, he testified that he and Detective Baker went to get coffee while the defendant, the two females and the other officers remained in the apartment. They were gone approximately one-half hour. Officer Randazzo testified that Officer Bandt took the photographs in the residence. Detective Baker found the guns and then photographs were taken.

The defendant has three felony convictions, including one for retail theft. The defendant is aware that the government is alleging that he is an armed career criminal which would subject him to a 15-year minimum mandatory sentence if he is an armed career criminal and if he is convicted of the instant offense.

## **Analysis**

In seeking suppression of his statements, the defendant asserts that the search of his apartment was warrantless and therefore unreasonable because the search warrant executed by the police listed the address to be searched as 1731 W. Atkinson Avenue, Unit 1 and the defendant resides at 1735 W. Atkinson Avenue, Unit 1. The defendant further contends that this was not a mere technical error since the warrant application clearly listed the address to be searched – 1731 W. Atkinson Avenue, Unit 1. The defendant further maintains that later amendment of the warrant did not cure the problem because the firearm had already been discovered and the defendant placed under arrest. He further asserts that the good faith exception is not applicable because the police did not act in good faith.

In opposing the motion, the government asserts that the original search warrant sufficiently described the place to be searched because it described a multi-unit building and

- 8 -

Case 2:07-cr-00061-LA   Filed 07/11/07   Page 8 of 14   Document 37

and identified the correct apartment, Unit 1 on the second floor. The government also states that mere technical errors in particularity are insufficient to invalidate a warrant and that an erroneous description does not necessarily invalidate a warrant, citing cases.

In response, the defendant takes issue with the government's position that the warrant merely contained a technical error, asserting that the address on the warrant was plainly wrong. The defendant further points out that when the officers executing the warrant were directed to 1735 W. Atkinson Avenue, they knew the address on the warrant was wrong.

This case presents issues concerning the validity of the initial search warrant and the ultimate search of the defendant's apartment. These issues will be discussed separately.

The Fourth Amendment to the United States Constitution provides that "no warrants shall issue, but upon probable cause . . . and particularly describing the place to be searched." As the Court explained in Maryland v. Garrison:

> The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.

480 U.S. 79, 84 (1987). A warrant sufficiently particularizes the place to be searched if the executing officers "can with reasonable effort ascertain and identify the place intended." Steele v. United States, 267 U.S. 498, 503 (1925). The search warrant should describe the places to be searched and objects to be seized with sufficient particularity to leave "nothing . . . to the discretion of the officer executing the warrant." Andresen v. Maryland, 427 U.S. 463, 480 (1976) (quoting Marron v. United States, 275 U.S. 192, 196 [1927]). Thus, in assessing the sufficiency of the description in a search warrant, the court must determine

- 9 -

whether the warrant describes the premises to be searched with sufficient particularity to enable the executing office to locate and identify the premises with reasonable effort and whether there is any reasonable probability that another location might be erroneously searched. See United States v. Johnson, 26 F.3d 669, 694 (7th Cir. 1994).

In this case, the defendant does not claim that the warrant inadequately described the "persons or things to be seized" or that there was no probable cause to believe that the items might be found in "the place to be searched." The question is whether the listing of 1731, rather than 1735, W. Atkinson Avenue invalidated a warrant that would have been valid if it had reflected the actual entry address to the defendant's apartment.

In United States v. Valentine, 984 F.2d 906, 909 (8th Cir. 1993), the court found that a search warrant was sufficiently specific, even though it identified the target of the search as 3048 Thomas when actually the building to be searched was connected to 3050 Thomas and corresponded to the number 3050. The court found that the warrant described the target building in detail and the search was confined to that building. The court stated that "[m]ere technical errors in particularity are not enough to invalidate a search warrant." Id.

In Johnson 26 F.3d at 694, the court found that the search warrant met the particularity requirement where the warrant described the house as "a two-family residence with beige siding and brown trim; the number 2958 appearing on the west side," even though the description did not include the fact that 2958A was the address of the upper unit. The court held that the omission was not fatal because the warrant "accurately described the house to be searched and there was no risk that the officers executing the warrant would search some other house." Id.

- 10 -

In United States v. Lora-Solano, 330 F.3d 1288, 1293 (10th Cir. 2003), the anticipatory search warrant listed the wrong house number – 2021 instead of 2051. The court noted that 2021 Camelot Way apparently did not exist and that the agents drove with the informant to the neighborhood and ascertained the correct address. Based on all the circumstances, the court concluded that there would not have been a mistaken search of other premises. Id.

Although not directly on point, the cited cases provide guidance on determining whether the search warrant in this case meets the particularity requirements of the Fourth Amendment. Here, the warrant described the premises to be searched as follows:

> 1731 W. Atkinson Av. Unit 1 is the upper unit of a multiple unit building having a brown brick exterior and red trim. The numbers 1731 appear on the North side of the building. The premises is located in the City of Milwaukee, County of Milwaukee, State of Wisconsin.

The number, 1731, is one of the three numbers appearing on the multi-unit building that was the focus of the search. Number 1735 is above the door just west of the door numbered 1731. The evidence established that there is only one Unit 1 in the multiple unit building. When the officers were attempting to execute the warrant, they were advised that the apartment they were seeking had to be accessed through the entryway marked 1735. The warrant described the target building in detail and identified the specific unit to be searched. The search was confined to the specified unit. Thus, under the circumstances, the court finds that the initial search warrant sufficiently described the place to be searched and there was no risk that the officers would mistakenly search another place.

Even if the court were to conclude that the search warrant did not meet the particularity requirement of the Fourth Amendment, the officers did not conduct a warrantless search of the defendant's residence as the defendant contends. The evidence at the hearing established

- 11 -

that Officer Bandt sought an amended search warrant once the officers were inside the building. Officer Bandt testified that the officers had made so much noise when initially attempting to enter the building that he was concerned that evidence would be removed before the officers could obtain a warrant with the correct address. He was also concerned for the safety of the officers. Therefore, the officers secured the residence. The officers ultimately obtained an amended warrant listing the address of the place to be searched as 1731-1735 W. Atkinson Avenue, Unit 1.

The parties dispute when the search of the defendant's apartment actually occurred. Officer Bandt and two other officers – Detective Baker and Officer Randazzo – testified that the officers did not search the defendant's apartment until after the amended warrant was obtained. To the contrary, the defendant testified that the officers searched his residence immediately upon entering and located the firearm. Only then, after Officer Bandt asked about the defendant's address and was told that his address was 1735 W. Atkinson, did the officers leave to obtain another warrant, according to the defendant.

Resolution of this issue focuses on the credibility of the witnesses. Officer Bandt, as well as Officers Baker and Randazzo, testified clearly and unhesitatingly. Their testimony was internally consistent and consistent with one another on the timing of the search. The defendant's testimony was clear and concise. However, on balance and based on the evidence presented, the court finds the testimony of the officers more credible than that of the defendant.

Officer Bandt knew at the time the officers initially entered the building that they were entering through the doorway with the number 1735. Thus, he knew at that time that the address on the search warrant was different and not accurate. The defendant testified that

Officer Bandt only asked him if his address was 1731 after the search had ended. It would appear to make little sense to ask the defendant after the search was completed if the address was 1731 W. Atkinson since Officer Bandt was well aware that the officers had entered the building through the door numbered 1735. Similarly, it seems unlikely, as the defendant testified, that Officer Bandt would wait until the end of the search to ask him if he was Gene Wade. By that time, the defendant had been placed in handcuffs and was in custody.

The testimony established that Officer Bandt left the defendant's apartment to obtain an amended search warrant. It seems improbable that Officer Brandt would go to the trouble of obtaining an amended search warrant and then jeopardize the investigation by conducted a premature search of the premises. Finally, the court finds that under the circumstances, the defendant had an arguable motive to be less than candid about the timing of the search of his residence. Accordingly, considering the totality of the circumstances, the court that the officers did not search the defendant's apartment until after Officer Bandt had obtained an amended search warrant authorizing the search at 1731-1735 W. Atkinson Avenue, Unit 1.

In sum, the initial search warrant sufficiently described the place to be searched and there was no risk that the officers would search another location in error. See Johnson, 26 F.3d at 684. Thus, the warrant met the particularity requirement of the Fourteenth Amendment. Even if the court were to conclude that the initial warrant was defective, the search of the defendant's apartment occurred after Officer Bandt obtained an amended search warrant which authorized the search of 1731-1735 W. Atkinson Avenue, Unit 1. Accordingly, the court will recommend that the United States District Judge enter an order denying the defendant's motion to suppress evidence - warrantless search. (Docket # 10).

- 13 -

## CONCLUSION

**NOW, THEREFORE, IT IS HEREBY RECOMMENDED** that the United States district judge enter an order **denying** defendant Wade's motion to suppress evidence - warrantless search. (Docket #10).

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C), Federal Rule of Criminal Procedure 59(b)(2), and General Local Rule 72.3 (E.D. Wis.). Based on the agreement of the parties, written objections to any recommendation herein or part thereof may be filed within seven days of service of this recommendation, including weekends. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to object in accordance with the rules cited herein waives your right to review.

Dated at Milwaukee, Wisconsin this 11th day of July, 2007.

BY THE COURT:

   s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge