# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    v.                                                    **Case No. 07-CR-61**

**GENE WADE**
        **Defendant.**

## DECISION AND ORDER

The government charged defendant Gene Wade with possessing a firearm as a felon, contrary to 18 U.S.C. § 922(g)(1). The government further alleged that based on prior convictions defendant qualified as an armed career criminal under 18 U.S.C. § 924(e).

Defendant moved to suppress the firearm, which was seized from his apartment pursuant to a search warrant, arguing that the warrant listed the wrong address. He further argued that the officers' later amendment and re-submission of the warrant application did not cure the defect because the officers had already seized the firearm by the time the amended warrant issued.

The motion was referred to a magistrate judge, who held a hearing then issued a recommendation that the motion be denied. The magistrate judge concluded that the original warrant described the place to be searched with sufficient particularity, and in any event the officers did not conduct the actual search until an amended warrant listing the correct address was approved. Defendant objects to the recommendation, requiring me to review the matter de novo. Fed. R. Crim. P. 59(b)(3).

## I. FACTS

Neither side objects to the magistrate judge's recitation of the facts or requests a de novo evidentiary hearing. Therefore, I will adopt the magistrate judge's factual findings and present an abbreviated version of events in this decision.

On January 25, 2007, at 4:02 p.m., on the application of City of Milwaukee police officer Timothy Bandt, a Milwaukee County court commissioner issued a no knock search warrant. The warrant described the premises to be searched as follows: "1731 West Atkinson Av. Unit 1 is the upper unit of a multiple unit building having a brown brick exterior and red trim. The numbers 1731 appear on the North side of the building. This premises is located in the City of Milwaukee, County of Milwaukee, State of Wisconsin." (Def.'s Mot. to Suppress Ex. 2 at 1.)

On January 27, 2007, Milwaukee police officers traveled to 1731 West Atkinson to execute the warrant. As the officers attempted to force entry through the door marked 1731, a citizen advised the officers that Unit 1 in the building was accessible only through a door on the same wall of the building marked 1735.[1] Another citizen, who had keys to the building, admitted the officers through the door marked 1735. The officers proceeded to the second floor of the building and located Unit 1. According to Bandt, as the officers were about to enter, defendant opened the door.[2] Officers entered the unit and secured defendant and his two female visitors. After the apartment was secured, Bandt asked defendant his address, and defendant stated 1735 West Atkinson. Bandt testified that he told the others not to search and left to secure an amended warrant. He then approached another court commissioner and

---

[1]Apparently, there are three doors on this side of the building, marked 1731, 1733 and 1735. Nevertheless, this structure constitutes a single building.

[2]Bandt indicated that he was able to identify defendant at the door.

2

revised his warrant application to list an address of 1731-1735 West Atkinson Unit 1. He wrote: "1731-1735 Atkinson Av. is a multi unit building. Unit 1 is directly above 1731. It was found that access to Unit 1 is 1735 W. Atkinson, and is 1735 W. Atkinson." (Id. Ex. 2 at 7.) The commissioner authorized a modified warrant for "1731 & 1735 West Atkinson Av. Unit 1." (Id. Ex. 2 at 1.)

Bandt testified that he then called the other officers, who had remained inside defendant's apartment, and advised them that they could begin the search. Milwaukee police detective David Baker located a loaded .357 revolver concealed under a dresser drawer in the bedroom.

Bandt testified that officers entered and occupied defendant's apartment before he obtained the revised warrant for 1735 West Atkinson because they were concerned that evidence would otherwise be removed. The officers made a lot of noise entering the building, and it was no secret they were there. Baker testified that he did not commence his search until after the modified warrant issued. Another member of the search team, officer Anthony Randazzo, likewise testified that the officers secured the residence but did not search until after they were told it was alright.

Defendant testified that on January 27 he heard a commotion, looked through his peephole and saw officers banging on the door to Unit 5. He indicated that he opened his door, and the officers turned on him with weapons drawn, telling him to get down. The officers then entered his apartment, cleared it, then immediately commenced a search. He testified that he heard one of the officers in the bedroom say, "we got it." Defendant stated that Bandt then asked him if he was Gene Wade and if this was 1731 West Atkinson. Defendant replied, "no, this is 1735." Stunned, Bandt walked out of the apartment. Defendant stated that he

3

heard officers say "this is wrong" and needed to be "straightened out." Bandt then left with another officer. Later, Bandt returned and stated that he had called a conveyance. Officers then arrested defendant and took him from the apartment.

## II. DISCUSSION

### A. Applicable Legal Standards

The Fourth Amendment requires that a search warrant contain a description of the particular place to be searched and the things to be seized. "This particularity requirement protects persons against the government's indiscriminate rummaging through their property." United States v. Jones, 54 F.3d 1285, 1289-90 (7th Cir. 1995). "The particularity requirement is satisfied if 'the description is such that the officers with a search warrant can with reasonable effort ascertain and identify the place intended.'" United States v. Nafzger, 965 F.2d 213, 215 (7th Cir. 1992) (quoting Steele v. United States, 267 U.S. 498, 503 (1925)); see also United States v. Hinton, 219 F.2d 324, 326 (7th Cir. 1955) ("The basic requirement is that the officers who are commanded to search be able from the 'particular' description of the search warrant to identify the specific place for which there is probable cause to believe that a crime is being committed.").

"When a search involves a building with multiple, separate units, the warrant must specify the precise unit that is the subject of the search to satisfy the particularity requirement." United States v. White, 416 F.3d 634, 637 (7th Cir. 2005), cert. denied, 126 S. Ct. 1393 (2006).

> The Supreme Court has recognized, however, that the validity of a warrant must be judged on the basis of the information available at the time that the warrant issued. See Maryland v. Garrison, 480 U.S. 79, 85 (1987) ("the discovery of facts demonstrating that a valid warrant was unnecessarily broad does not retroactively invalidate the warrant"). In Garrison, the police obtained a warrant for a floor of a three-level residential building, under the mistaken belief that the

4

> floor designated in the warrant contained only one apartment -- that of a suspect named McWebb. See id. at 81. The police relied on an informant, an exterior examination of the building, and an inquiry of a utility company when making this determination. See id. As it turned out, there were two apartments, one of which belonged to Garrison and which contained drugs that the police discovered during their search. See id. Analyzing the validity of the warrant, the Supreme Court stated that if the officers knew or should have known that there were two separate dwellings on the third floor, the warrant would not authorize the search of the whole floor (as it would not be particularized). See id. at 85. However, the Supreme Court found that the police investigation had produced a reasonable belief that there was only one tenant. See id. at 86, n.10. The Supreme Court thus concluded that the warrant was valid based on the information that the officers disclosed and had a duty to disclose to the magistrate. See id. at 86.

Id. at 637-38.

Likewise, courts have recognized that mere technical errors in describing the place to be searched are not fatal, so long as there is no risk that the officers will search the wrong residence. United States v. Johnson, 26 F.3d 669, 694 (7th Cir. 1994). Thus, in Johnson, the court excused the officer's failure to include the specific number for the upper unit of a building in the warrant application, where the officer established probable cause for both units and the officer was neither negligent nor reckless for failing to have knowledge of the other number's existence. Id.

**B.      Analysis**

Defendant's motion presents two issues. First, was the original warrant sufficiently specific to permit a search of defendant's apartment? Second, if not, did the officers cure the deficiency by obtaining an amended warrant prior to conducting the actual search? I agree with the magistrate judge that the answer to both questions is "yes."

   **1.      The Original Warrant Was Sufficient**

As noted, the original warrant authorized a search for "1731 West Atkinson Av. Unit 1,"

5

which was described as "the upper unit of a multiple unit building having a brown brick exterior and red trim." When the officers arrived at 1731 West Atkinson, they learned that Unit 1 could be accessed only through a door on the same wall marked "1735." It is undisputed that the door marked 1735 opened into the same building as the door marked 1731. It is also undisputed that Unit 1 is the upper unit of that building and is located directly above the door marked 1731, although technically the address for that unit is 1735 West Atkinson.

Under these circumstances, the warrant's listing of the wrong street number did not render it insufficiently specific. There was no danger that the officers would search the wrong unit based on the error. The warrant described the building and the specific unit within it to be searched. Although the building had several doors with different numbers on the same wall, there was only one "Unit 1" in the building. There is nothing in the record indicating that if the officers had entered the door marked 1731 they could have searched the wrong "upper unit"; as indicated, there was only one unit corresponding to the warrant's description in this building. See Johnson, 26 F.3d at 694 (upholding search where warrant clearly described unit to be search but failed to include the fact that the upper unit had a different number).

As the magistrate judge noted, courts regularly uphold warrants containing similar technical errors or omissions. E.g., United States v. Lora-Solano, 330 F.3d 1288, 1293-94 (10th Cir. 2003) (upholding search where the street address in the warrant was off by a single digit, but the officers were still able to identify the correct house); United States v. Valentine, 984 F.2d 906, 909 (8th Cir. 1993) (upholding search where the warrant listed 3048 Thomas as the target, although the building to be searched was connected to 3050 Thomas and corresponded to the number 3050); see also United States v. Brakeman, 475 F.3d 1206, 1211-12 (10th Cir. 2007) (affirming search where, based on their knowledge, officers were able to

6

identify the correct search target, despite confusion as to the precise address); United States v. Pelayo-Landero, 285 F.3d 491, 497 (6th Cir. 2002) (stating that "courts routinely uphold warrants like the one at issue where one part of the description might be inaccurate but the description has other accurate information to identify the place to be searched with particularity"); United States v. Vega-Figueroa, 234 F.3d 744, 756 (1st Cir. 2000) (citing United States v. Bonner, 808 F.2d 864, 866-67 (1st Cir. 1986) (noting that the absence of the correct house number is not fatal where the warrant otherwise contains an adequate description of the premises to be searched); United States v. Garza, 980 F.2d 546, 552 (9th Cir. 1992) (finding that a mistaken street address did not invalidate the search where the warrant contained an accurate physical description of the location to be searched); United States v. Henry, No. 96-4951, 1998 U.S. App. LEXIS 13185, at *8-9 (4th Cir. June 19, 1998) (upholding search, despite incorrect street address in the warrant application, where the description of the premises to be searched was otherwise sufficient); United States v. Bentley, 825 F.2d 1104, 1109 (7th Cir. 1987) ("The search of one office not listed in the warrant came about because the officers realized that the warrant had the wrong number (Room 203 instead of Room 201); the right number was readily ascertainable, and the officers did just what they should in searching the right office rather than the one with the number mistakenly given in the warrant."); United States v. Burke, 784 F.2d 1090, 1091 (11th Cir. 1986) (upholding a warrant containing an incorrect address where the warrant "contained a detailed physical description of the building, minimizing the possibility that an apartment in any building other than the correct one would be searched"); United States v. Turner, 770 F.2d 1508, 1510-11 (9th Cir. 1985) (finding no violation of the Fourth Amendment where the description of the suspect house turned out to be correct except for the street number). Defendant cites no authority for invalidating a

7

search based on a warrant containing a similar defect, and I have found none.

Conceding that a simple error in the address listed in the warrant rarely misleads the police, defendant argues that in this case the officers were, in fact, misled, as evidenced by their attempt to search the wrong place. He states that when the officers first arrived they attempted to batter a door to a tavern located in the building. Only after a citizen told them that this was not the correct door to access the apartments in the building did they proceed to 1735 and eventually to defendant's unit. The argument fails. The officers did not attempt to search the wrong premises. Rather, they attempted to enter the building containing defendant's unit through the wrong door. There is nothing in the record suggesting that the officers sought to obtain access to and search any apartment other than Unit 1 within the building. As the government notes, the warrant identified the correct building, described it as a multi-unit building, and identified the correct apartment (Unit 1 on the second floor). The officers, based on the information they had, reasonably attempted to enter the building through the door marked 1731, which was directly below Unit 1. Multi-unit buildings often have more than one exterior entrance, and I cannot conclude that the officers' initial mistake in picking an entrance renders the instant warrant, which precisely identified the building and the unit within it to be searched, invalid.

Therefore, for these reasons and those stated by the magistrate judge, I conclude that the original warrant described the place to be searched with sufficient particularity, that it allowed the officers to enter defendant's apartment, and that the officers could have proceeded with the search immediately without violating defendant's Fourth Amendment rights. Accordingly, defendant's motion to suppress must be denied.

8

**B. The Officers Refrained from Searching Until the Warrant Was Amended**

Bandt testified that because the officers' initial attempt to enter the building made such a commotion, he was concerned about the destruction of evidence if the officers left prior to conducting the search. Therefore, he decided to freeze the scene until he could obtain an amended warrant listing the correct address. Defendant contends that the search occurred prior to the issuance of the amended warrant. Because I find that the initial warrant allowed the entry and search of defendant's apartment, I need not determine precisely when the search occurred.

Even assuming, arguendo, that it was necessary for Bandt to obtain an amended warrant prior to searching, I agree with the magistrate judge that the officers acted properly. First, it was permissible for the officers to enter the residence in order to freeze the scene and prevent the destruction of evidence while they obtained an amended warrant. See United States v. Limares, 269 F.3d 794, 799 (7th Cir. 2001); see also Illinois v. McArthur, 531 U.S. 326, 328 (2001) (allowing police to prevent a man from entering his home while they obtained a warrant, where the officers reasonably believed the man would destroy evidence if allowed inside); United States v. Kempf, 400 F.3d 501, 503 (7th Cir. 2005) (upholding warrantless entry based on exigent circumstances in order to freeze the scene while a warrant was obtained). This was not a situation where the officers needlessly created an exigency, which they could address only by conducting an otherwise illegal warrantless entry. The officers had a valid warrant to search defendant's apartment, which they reasonably attempted to execute at the wrong door.[3]

---

[3]Defendant does not challenge probable cause for the warrant or content that Unit 1 in the building identified in the warrant is not his apartment.

9

Second, I agree with the magistrate judge that the officers' version of events is more credible than defendant's. It would make little sense for the officers, aware that defendant's apartment was accessible only via the door marked 1735, to search first and only later ask defendant if his correct address was 1731 West Atkinson. It would also make little sense for Bandt to immediately conduct the search and then travel back to the courthouse to obtain an amended warrant.

In sum, I find that the officers did not conduct a warrantless search of defendant's apartment. The original warrant they possessed was valid, and in any event the officers delayed the search until the amended warrant containing the correct address issued. The officers acted in good faith in carrying out this search and did not violate defendant's rights under the Fourth Amendment.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation is **ADOPTED**, and defendant's motion to suppress (R. 10) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 16th day of July, 2007.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge